# THE STATE v. HENRY DUVENICK, Appellant.

### Division Two, November 14, 1911.

1. **INFORMATION: Two Counts: One Transaction: Election.** Where the information consists of two counts, charging different offenses, both being based on the same transaction, no election can be required before the introduction of evidence. Where the information, in the first count, charged defendant with felonious assault with a deadly weapon, and, in the second, with feloniously and unlawfully exhibiting a deadly weapon in a rude, angry and threatening manner, both counts being based on the same transaction, etc., the court does not err in overruling, before the introduction of evidence, defendant's motion to require the State to elect upon which count it would proceed to trial.

2. **———: ———: ———: ———: Withdrawal by Formal Instruction.** Where the State at the close of the evidence elects to proceed on only one of the two counts in the information, the court does not commit reversible error in failing to withdraw the other count from the consideration of the jury by a formal instruction—especially where the jury are instructed in terms upon the other count only, and defendant asks no such instruction.

3. **EXHIBITING DEADLY WEAPON: Justification: Instruction: Exception.** Where there is no evidence of any circumstance that would justify the exhibition of a deadly weapon, an instruction on the subject of exhibiting a deadly weapon in a rude, angry and threatening manner, otherwise free from objection, is not erroneous because it fails to state what circumstances would justify the exhibition of a deadly weapon in the presence of another.

4. **WHEN LAWS WENT INTO EFFECT: In Force at Time Offense Was Committed.** Laws passed at the 1909 session of the Legislature went into effect ninety days after the adjournment of the Legislature, namely, on August 16, 1909. An offense committed on October 25, 1909, in violation of an act passed at the 1909 session of the General Assembly, was in violation of a law in force at the time the offense was committed.

5. **INFORMATION: Omission of Letter t from Word Against.** The omission of the letter t from the word against, in the concluding clause of the information, reading, "Agains the peace and dignity of the State," was obviously a clerical error, and did not invalidate the information.

State v. Duvenick.

Appeal from Moniteau Circuit Court.—*Hon. Wm. H. Martin,* Judge.

AFFIRMED.

*J. W. Hunter* and *R. M. Embry* for appellant.

(1)   The constitutional provision that all indictments shall conclude with the words, "against the peace and dignity of the State," is mandatory. "Agains" the peace and dignity of the State, does not comply with this mandate. State v. Campbell, 210 Mo. 202; State v. Lopez, 19 Mo. 254; State v. Clevenger, 25 Mo. App. 653; State v. Pemberton, 30 Mo. 376; State .v. Stacy, 103 Mo. 11; State v. Ulrich, 96 Mo. App. 689. (2)   The information can not be upheld on the ground that the word "against" is only misspelled. The word "agains," is not an abbreviation of the word "against" and there is  no such word in the English language as "agains." State v. Mitchell, 25 Mo. 420; State v. Fairlamb, 121 Mo. 137; State v. Clinkenbeard, 135 Mo. App. 189.   (3)   At the conclusion of all the evidence. defendant asked that the State be required to elect on which count it would ask a verdict, and the court, in the presence of the jury, stated that there was evidence under which the defendant might be convicted of the charge in either count, this was in the presence of the jury, and in the nature of a verbal instruction to the jury, and a comment on the evidence.   After the State dismissed as to the first count, the jury was not informed by instruction that it had so dismissed and the jury was not instructed that they could not convict under the first count, but could convict under the second count. State v. Carragin, 210 Mo. 351; R. S. 1909, sec. 5244; State v. DeMasse, 98 Mo. 340.

*Elliott W. Major*, Attorney-General, and *Campbell Cummings*, Assistant Attorney-General, for the State.

(1)    Appellant's second and third grounds, that the second count of the information does not conclude with "against the peace and dignity of the State," is without merit.    In the information in the record the word "agains" is used instead of "against," and the inadvertent omission of the letter "t" is made the basis of appellant's claim.    This is a trivial matter of form merely and in no way could it have possibly prejudiced any of the substantial rights of the defendant upon the merits.    It is a substantial compliance with the language of the Constitution (Art. 6, sec. 38).    Such a slight and trivial deviation from the exact form prescribed in the Constitution could not invalidate the information.    It conforms in sense and substance. It is *idem sonans*.    It does not alter the phrase in the least.    Appellant evidently presumes this point is decided by the cases of this court which have held that the omission of the word "the" from the constitutional language is fatal.    State v. Warner, 220 Mo. 23; State v. Campbell, 210 Mo. 202; State v. Skillman, 209 Mo. 408.    But a reading of the full and thorough decision in the Campbell case, supra, will readily show that the reasoning of the above and similar cases can avail him nothing.    The only case that we have been able to find in the slightest degree in point in a wide search of the authorities, is the highly technical case of Bird v. State, 37 Tex. Crim. 408. In this case, supra, the two letters "ag" were omitted in the word "against," using the word "ainst," which the court of Criminal Appeals of Texas said is not *idem sonans*, and has no meaning at all.    The word "agains" and "against" are certainly *idem sonans*, and the meaning is clear and a substantial compliance with the Constitution in both substance and form.    Our courts have uniformly held that any

change in the phrase that does not enlarge, change or vary the phrase or the sense is immaterial. State v. Campbell, supra; State v. Hays, 78 Mo. 603. When a word necessary and essential to properly charge the statutory offense is misspelled in an indictment, it is not thereby vitiated where the meaning is plain and the word used is *idem sonans.* State v. Lucas, 147 Mo. 70; State v. Colly, 69 Mo. App. 444. (2) Appellant's first ground in his motion in arrest is, "Because the second count in the information in this cause does not charge defendant with violation of the law of the State in force at the time the alleged offense is charged to have been committed." The question is, Was the law of 1909, p. 452 (R. S. 1909, sec. 4496) in force on October 25, 1909? The act was not a revision measure, was not passed by revised bill, but a new and independent act passed at a revision session affecting but two sections and but one subject. Section 15 of appellant's evident claim is that the Declaratory Act (Laws 1909, p. 643) postponed the taking effect and being in force of the new Weapon Act (Laws 1909, p. 452) until November 1, 1909. In discussing the question it is well to bear in mind the following facts: The new Weapon Act, without an emergency clause, was passed and approved April 28, 1909. The Declaratory Act, with an emergency clause, was passed and approved and went into effect June 4, 1909. Section 15 of the Declaratory Act fixed the going into effect of the Revised Statutes, November 1, 1909. The Legislature adjourned, May 17, 1909. Ninety days thereafter was August 16, 1909. Appellant's offense occurred October 25, 1909. The true intent of the Legislature, and the only effect of that part of the Declaratory Act, is to name November 1st as being the day when the Revised Statutes of Missouri for 1909 would be born and have life and effect as such. From that day on they will be evidence of the Revised Statutes of 1909, and can be cited, used

and quoted as such. And the Declaratory Act is then consistent and in harmony with section 4178, R. S. 1899, and not otherwise. The main object of the revision was to incorporate all the existing statutes in three volumes, that a person desiring to know the written law upon any subject might learn it by an examination of one of those volumes, without the necessity of referring to many prior statutes upon the subject. Hamilton v. Rathbone, 175 U. S. 414; 36 Cyc. 1166. (3) No specific instruction or even request was asked, no motion made, withdrawing the evidence admitted under the first count of the information, and appellant did not preserve an exception to the failure of the court to instruct the jury on all necessary questions of law arising in the trial. State v. Espenschied, 212 Mo. 215; State v. George, 214 Mo. 262; State v. Sassaman, 214 Mo. 695; State v. Coleman, 186 Mo. 151; State v. Goldsby, 215 Mo. 48. Moreover, it could have been only harmless error, as defendant was convicted on the second count. State v. Sharpless, 212 Mo. 176. The "asking" by counsel to compel the State to elect, and the court's answer to said counsel could not be considered as an oral instruction to the jury, but even if so, appellant saved no exception to the action of the court in giving oral instructions. State v. DeMasse, 98 Mo. 340. The defendant gave no evidence that he came within any of the exceptions mentioned in the proviso clause and there was no such evidence in the entire bill of exceptions. Likewise, none that would justify the exhibition of the weapon. Therefore, there was no ground for submitting to the jury what circumstances would have justified its exhibition. Besides, such would have been an affirmative defense for appellant to have shown. State v. Livesay, 30 Mo. App. 633; State v. Hovis, 135 Mo. App. 544; 5 Am. & Eng. Ency. Law (2 Ed.), p. 735; State v. Cousins, 131 Mo. App. 617; State v. Reed, 140 Mo. App. 251.

Such an issue was not in the evidence and so the court should not have given an instruction thereon. State v. Hudspeth, 150 Mo. 12; State v. Chambers, 87 Mo. 406; State v. McCaffery, 225 Mo. 617; State v. Groves, 194 Mo. 452; State v. Clark, 221 Mo. 391; State v. Riley, 100 Mo. 493.

FERRISS, J.—At the January term, 1910, of the circuit court of Moniteau county, the prosecuting attorney, by leave of court, filed his third amended information in two counts, the first of which charged the defendant with felonious assault with a deadly weapon, and the second, with feloniously and unlawfully exhibiting a deadly weapon in a rude, angry and threatening manner, in the presence of one B. F. Brockhausen; both counts being based upon the same transaction.

Before proceeding to trial, the defendant, by counsel, moved the court to require the State to elect upon which count in the information it would proceed to trial, which motion was overruled, the defendant duly excepting.

At the close of the evidence the State dismissed as to the first count, and elected to stand upon the second count. The trial resulted in defendant's conviction, his punishment being assessed by the jury at a fine of seven hundred dollars. Judgment was pronounced in conformity to the verdict, from which judgment defendant appeals.

The evidence for the State was, in substance, as follows:

On the evening of October 25, 1909, B. F. Brockhausen, the prosecuting witness, was leaving the defendant's premises at California in said county, on his way home, when he heard some one halloa to him to stop and throw up his hands. He did not at first think that he was the party so addressed, and did not stop until he heard the call two or three times.

He then looked around, and saw the defendant within twenty feet of him, with a loaded revolver pointing at him.  Defendant told Brockhausen to walk into his (defendant's) house, and Brockhausen did so.  When inside he was commanded by the defendant to sit down, the defendant pointing his revolver at him at the same time.  Being asked by Brockhausen what he wanted with him, defendant said, "You know what you have been doing," but made no further explanation.  Brockhausen testified that he "tried to argue the matter" with defendant, telling him that he had done him no harm and could not understand why he so treated him; that Mrs. Brockhausen came in from her home near by and asked her husband what he was doing there, and received the answer that he was not there because he wanted to be, but because defendant ordered him to come to his house at the point of a revolver; that she then asked defendant why he should treat her husband in such a way, and that defendant answered, "I saw him leaving my house—that is why I want him here;" that after some further talk defendant said he didn't need a revolver for Brockhausen, and laid it upon a dresser, but immediately took it down again, and then ordered both of them from the house.  Mrs. Brockhausen's testimony substantially corroborated that of her husband, but she testified that the defendant did not have the revolver pointed at her husband at the time she entered the room; that defendant held the revolver in his left hand, flourished it and laid it up when she came in.

The evidence for the defense, which consisted of the testimony of the defendant and his two sons, was in substance a denial of any show of anger on the part of the defendant, and of his having pointed the revolver at the prosecuting witness.  One of defendant's said witnesses testified that defendant first asked Brockhausen to stop, and that Brockhausen answered, "You can't make me stop," whereupon the defendant

took a revolver from a tree on his premises, held it in his hand, and told Brockhausen to go into the house with him.

It appeared from the evidence for the defendant. that the prosecuting witness had advised defendant's wife to leave him, and the defendant testified that when he stopped Brockhausen and asked him to go into the house with him, his object was to get Brockhausen to explain why he was trying to break up his family.

We will take up the objections made by defendant in his motions for a new trial and in arrest.

I.   The complaint that the verdict is against the evidence is without foundation.   There is ample evidence to sustain the verdict.

II.   Defendant complains because the court did not compel the State to elect on which count in the information it would go to  trial before the evidence was submitted to the jury.   On this point it is sufficient to cite the following from the case of State v. Sharpless, 212 Mo. l. c. 203:   "Counsel for appellant complain at the action of the court in refusing to compel the State to elect upon which count of the information it would prosecute the defendant.   It is sufficient to say of this complaint that this court has repeatedly announced that it is not error to refuse an election where the several counts refer to the same transaction, and as applicable to this case, the record discloses that the defendant was only convicted upon the second count; therefore there is no ground of complaint which can be successfully directed to the action of the court upon the first count.   [State v. Schmidt, 137 Mo. 266; State v. Houx, 109 Mo. 654; State v. Pratt, 98 Mo. 482.]"

In the Houx case, supra, (l. c. 660), this court said:   "Whether the State should be required to elect upon which count in an indictment it will proceed

to trial is regulated in all cases by sound judicial discretion, but, as a rule, no election will be required when the different counts relate to but one transaction."

It is a rule of practice, well established, in both civil and criminal cases, that where the same transaction is stated in different counts, no election can be required before the introduction of the evidence.

III. Defendant further complains that when the State elected at the close of the evidence to proceed upon the second count only, the court failed to withdraw the first count from the consideration of the jury by a formal instruction to that effect. We think no such instruction was necessary. The State dismissed as to the first count, and the court instructed the jury in terms upon the second count only, beginning the instruction with the words: "On the second count the court instructs you as follows." There is therefore no foundation for the claim that the jury might have convicted on the first count. Furthermore, the record shows that no request was made by the defendant to instruct the jury on this point, and no exception was saved to the action of the court in failing to do so.

IV. The fourth instruction is as follows:

"On the second count the court instructs you as follows: First. The court instructs the jury that if you believe and find from the evidence that the defendant, Henry Duvenick, at the county of Moniteau and State of Missouri, on the 25th day of October, 1909, did feloniously and unlawfully, in the presence of B. F. Brockhausen, exhibit a deadly weapon, to wit, a loaded pistol, in a rude, angry or threatening manner, and that said pistol was then and there a firearm, you will find the defendant guilty, and assess his punishment at imprisonment in the penitentiary for a term of two years, or by a fine of not less than one hundred dollars, nor more than one thousand dollars, or by im-

prisonment in the county jail not less than fifty days, nor more than one year, or by both such fine and imprisonment."

This instruction properly defines the offense, and is not susceptible to criticism because it failed to state what circumstances would justify the exhibition of a deadly weapon, there being no evidence upon which such exception could be based.

V.   In his motion in arrest defendant contends that the information does not charge the defendant with a violation of any law of the State in force at the time the alleged offense is charged to have been committed.

The offense charged in the information was created by an act passed in 1909 (Laws 1909, p. 452), which in effect amended the law as it formerly stood.   In the case of State v. Schenk, decided at this term, and not yet officially reported, we have fully discussed the question as to when laws passed at the 1909 session of the Legislature went into effect, and under our holding in that case the act in question went into effect ninety days after the adjournment of the Legislature.   Reference may be had to the opinion in that case for a full discussion of the subject.   The offense having been committed on the 25th day of October, 1909, it was subject to prosecution under the Act of 1909, which went into effect August 16, 1909.

VI.   Complaint is made that the letter *t* is omitted from the word "against" in the closing line of the information, so that the line reads, "agains the peace and dignity of the State."   We consider this objection unworthy of serious consideration or discussion.   Just complaint could be made that our system of jurisprudence is artificial and inadequate were we to hold that this information is bad because of the absence of one letter from one word in the clause, "against the peace and dignity of the State;" a clause which, although

required by our Constitution, adds nothing to the substance of the information, and is indeed but a superflous survival of an ancient form of pleading. The omission of the letter *t* is obviously a clerical error, and, furthermore, *agains* is *idem sonans* with the word "against."

Finding no error in the record, the judgment is affirmed. *Kennish, P. J.*, and *Brown, J.*, concur.

